THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CASIMIRO BERENGUER, Defendant and Appellant.

No. 8470. Argued June 5, 1941.—Decided July 8, 1941.

*Abelardo Casanova Prats, F. Acosta Velarde,* and *Frank Torres* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Casimiro Berenguer and others were charged with having murdered Colonel Luis A. Irizarry, of the National Guard of Puerto Rico, on July 25, 1938, in Ponce.

The information was filed on August 1, 1938, and on the following day all of the defendants moved the court for a bill of particulars specifying the participation of each in the crime. After both sides were heard on the motion, the court denied the same.

On August 16, 1938, the defendants moved to be tried separately by a jury, and on January 7, 1939, Casimiro Berenguer, appellant herein, through his counsel requested the dismissal of the prosecution as to him on the ground that he had not been tried within the statutory term of 120 days. His request was denied.

On January 9, 1939, the case was called for trial. The impaneling of the jury was commenced and after a laborious proceeding which fills more than one hundred pages of the

record, and after counsel for the defendant had said "we admit that we will not challenge anybody else" and the district attorney stated "we finally accept the jury," the defendant moved for the discharge of the jury for alleged errors in the impaneling of the same.

That motion was denied and then counsel for the defense addressed the court as follows:

"We take exception. If the court please, there is another question. Your Honor, taking into consideration the motion just denied by the court; that as a matter of justice the court was expected to use sound discretion; taking further into consideration the fact that our duty as counsel is to submit to the opinions and orders issued by a court in Puerto Rico, irrespective of our personal opinion regarding the point at issue; taking into consideration the circumstances surrounding the present case, and that our mission as counsel is to insist as much as possible and to be consistent with our own statements, we are going to raise a question, which has been in our mind for a long time and before this case was set for trial. We meant to raise the same before either of the other cases was tried, by means of a general challenge to the panel on the ground of prejudice and by means of a motion to discharge the jury, which was denied. As we fear that if we were to reproduce those motions they would be again denied; considering as a whole all such basic and accessory, fundamental and incidental questions which have been raised in the present case, this attorney, on behalf of the defendant and with his consent, now moves that he be tried by the court without a jury, and definitely waives a jury trial."

The question thus raised was fully argued in open court and finally decided in favor of the defendant. "As it is defendant's right and privilege," said the court, citing the case of *Ex parte Mauleón*, 4 P.R.R. 119 (2d ed.), and *People* v. *Sutton*, 17 P.R.R. 327, "the substitution is granted and the trial will be proceeded with by the court without a jury."

On the following day the judge asked if the parties were ready. They both answered in the affirmative and the trial commenced.

Then the defendant stated to the court that there were witnesses for the prosecution whose names were not indorsed on the information. A discussion arose between the district attorney and defendant's counsel who finally requested "that no witness should be permitted to testify whose name had not been previously indorsed." The district attorney objected, invoking the decision in *People* v. *Navarro,* 40 P.R.R. 169, and the court on the strength of the decision invoked ruled that "these witnesses may testify, even though their names are not indorsed on the information."

At the close of the evidence for the prosecution, the defendant presented a motion for nonsuit. After the same had been denied, the defendant introduced his evidence and the case was closed on January 13, 1939. Three days later the court entered the following judgment.

"On this day set for entering judgment in the present case, there appear the defendant Casimiro Berenguer, his attorney, J. M. Nazario, Esq., and the District Attorney, Guillermo S. Pierluisi, Esq.

"The trial of the present case was held during the 10th, 11th, 12th, and 13th of January, 1939, by the court without a jury, on motion of the defendant, who expressly waived jury trial.

"The court, after duly considering and weighing as a whole the evidence submitted by both parties in this case, and in view of Sections 36, 39 (subdivision 8), 199, 200, 201, and 202 of the Penal Code (1937 ed.), and the applicable jurisprudence, hereby adjudges the defendant Casimiro Berenguer guilty of murder in the first degree and consequently sentences said Casimiro Berenguer to life imprisonment in the Insular Penitentiary of Puerto Rico where he shall be permanently confined.

."This judgment is entered without the imposition of costs, due to defendant's insolvency."

The defendant moved the court to set aside the judgment as being contrary to section 309 of the Code of Criminal Procedure, and because the court refused him an opportunity to file pleadings pursuant to law.

84

On January 18, 1939, the court, by means of a reasoned order, left standing that part of the judgment which referred to the declaration of guilt and set aside the dispositive or punitive part thereof, and set the 23d of January to pronounce sentence, the defendant and the district attorney being notified.

On the day set the defendant appeared and filed a motion for a new trial. Two days later the court denied the motion and proceeded to sentence Berenguer to life imprisonment in the insular penitentiary, at hard labor.

It is from the above judgment that the aggrieved party has taken the present appeal which was heard on the 5th of last June.

Eighteen errors are assigned. The first two assignments refer to the bill of particulars and to the motion to dismiss the prosecution. The next five errors bear upon the waiver of jury trial. The eighth, ninth, tenth, and eleventh relate to the reception of the evidence. By the thirteenth, fourteenth, and fifteenth, the court is charged with having erred in weighing the evidence; in having acted under the influence of passion, prejudice, and partiality, and in having failed to decline to take cognizance of the case. In the sixteenth it is contended that the judgment is void as being contrary to the law; in the seventeenth, that a new trial should have been granted; and in the eighteenth, that the judgment ought to be reversed.

■ The bill of particulars was requested by all of the defendants, and in order to show that the error assigned is nonexistent it would be sufficient to refer to our decision in *People* v. *Escobar*, 55 P.R.R. 491.

After the defendant had requested and obtained a separate trial, he did not insist. However, at the trial, claiming that the district attorney had not fully set up his case in his opening statement, he renewed the objection and insisted on being furnished with still further particulars by the district

attorney in regard to the precise facts with which he was charged. We are of opinion that the matters could have been more frankly argued if the district attorney had given the defendant all the details asked and that the court ought to have ordered him to do so; we do not think, however, that the error, if any, prejudiced the substantial rights of the defendant and, therefore, that it could serve as a ground for reversal of the judgment.

Unquestionably, the decision in *People* v. *Colón*, 52 P.R.R. 399, cited by the appellant, favors his contention but not to the extent claimed by him. In the case at bar, as in the one cited, there are circumstances which lead the court, notwithstanding the error, to the conclusion that defendant's rights had not been prejudiced.

■ The just cause for the failure to hold the trial within the 120 days fixed by subdivision 2 of Section 448 of the Code of Criminal Procedure was shown. Therefore, it was not error for the court to deny the motion to dismiss the prosecution. It would seem advisable to transcribe from the order it made to that effect, as follows:

"The court has seen and heard the motion to dismiss filed by defendant's counsel. It has also taken into consideration the evidence introduced by the district attorney in order to show that there has been justification for the delay in holding the trial in this case. It has also taken into consideration the evidence submitted by the defendant regarding the number and circumstances of the cases tried by the court during such period. . . .

"In this case the information was filed jointly against nine defendants, one of whom is Casimiro Berenguer, on whose behalf this motion to dismiss has been presented. . .

"After the filing of the information on *August 1, 1938,* . . . . . the court set the trial *of all the defendants, jointly, for August 22, 1938.* On August 16, 1938, the defendant moved to be tried separately and pursuant thereto the trial of Elifaz Escobar, one of the defendants, was set for August 29, 1938. . . .

" . . . .This trial of Elifaz Escobar began on August 29 and ended on September 1, 1938.

"The court set the trial of defendant Tomás López de Victoria upon the same information covering said defendant Casimiro Berenguer, and the second of the above two trials was set for September 19, 1938. The trial of Tomás López de Victoria commenced on September 19 and terminated on September 26, and it was then that the jury brought in a verdict....

"Thereafter the trial against Santiago González Castro began on October 10, 1938, still within the one hundred and twenty days, and terminated with the verdict of the jury on October 15, 1938.

"The fourth trial of this series under the same joint information was that of The People of Puerto Rico v. Prudencio Segarra, which was set by this court for November 1, 1938, precisely within one hundred and twenty days from the filing of the information....

"The fifth trial of this series, also under the same joint information, was that of The People of Puerto Rico v. Juan Pietri, which was set by this court for December 19, 1938, and concluded on December 22 of the same month (sic), judgment being rendered on December 27, 1938.

"The sixth trial of this series, also under the same joint information, is that of The People of Puerto Rico v. Casimiro Berenguer, set for today, January 9, 1939. This case was not set for trial within the period from December 23, 1938, to January 8, 1939, on account of the festivities of Christmas, New Year, Epiphany, and other intervening holidays which made it difficult to secure the summoning and appearance of a sufficient number of jurors and of witnesses for both sides in order to hold the trial."

In the case of *People* v. *Morán,* 144 Cal. 48, 57, which was cited by the district judge himself in announcing his ruling, and in which it was held that there had been justification for the delay, it was said:

"We do not think the suspension of criminal trials during the week following Christmas is an unreasonable proceeding.

"  .        .        .        .        .        .        .        .

"Besides all this, Buckley was brought to trial within the sixty days, and the fact that this defendant, jointly charged with the same offense, had demanded and been accorded a separate trial was good cause for its postponement to a date when the court might safely assume the Buckley case would be concluded."

█ The errors numbered 3 to 7 were not committed either. As we know, it was defendant himself who waived a jury trial. Now, however, he maintains in various ways that it was error for the district court to decide the matter in his favor. We will confine our consideration to the substance of the argument.

There is involved a right which may be waived. This court in the case of *People* v. *Plata,* 43 P.R.R. 443, 446, said:

"We fail to perceive why the defendant was not permitted to waive a jury trial and to be tried by the court without a jury. If it was for fear that he might subsequently plead former jeopardy, as the *Fiscal* of this Court stated at the hearing of this appeal, it has already been decided that such plea can not be maintained where the jury has been discharged on motion of the defendant and with his consent. 16 C. J., p. 254, par. 409."

The fact that Section 2 of the Code of Criminal Procedure still contains the provision that "in cases involving capital punishment the verdict must be by a jury," does not preclude a waiver, inasmuch as capital punishment was abolished in Puerto Rico subsequent to the enactment of said Code. Act No. 42 of 1929 (Session Laws, p. 232).

Said legislative provision was contingent upon the existence of the death penalty. As the latter had been abolished, there was no justification for such provision which became ineffective even though it had not been expressly repealed. To expect the courts to go on applying it to cases in which formerly the death penalty was imposed would be tantamount to asking them to legislate, and they are without such power.

█ In the eighth assignment it is urged that the court erred in permitting the witnesses Pablo Quiñones, Narciso Majes, Eladio Ayala Delucca, and Guillermo Larragoiti Coimbre to testify regarding facts which occurred on July 20, 1938, and were not alleged in the information, and in the ninth it is claimed that it was error for the court to permit the witness Pedro José Chardón to testify in regard to facts not alleged in the information either.

It was alleged in the information that on the occasion of the holding of a parade in Ponce to commemorate the entrance of the army of the United States into the Island, and while the Governor of Puerto Rico was standing on a platform in front of the City Hall, together with other people who were named, watching the parade, the defendants "then and there, unlawfully, wilfully, and feloniously, with malice, premeditation, deliberation and with the firm and professed intention of illegally killing the human being, Hon. Blanton Winship, Governor of Puerto Rico, and by lying in wait, hiding behind the public who, at a short distance in front of the said platform were likewise watching the said parade, and making use of revolvers, deadly weapons, attacked the Hon. Blanton Winship, firing numerous shots at him, wounding with one of them in the chest Luis A. Irizarry, Colonel of the National Guard of Puerto Rico, a human being, the bullet having gone through the pulmonary vein and artery, as a consequence of which said Luis A. Irizarry died some hours later."

The statements of the witnesses objected to related to a certain meeting of Nationalists held a few days prior to July 25, 1938, and presided over by the defendant, in which it was decided to obstruct the parade and to kill the Governor; and it is the contention of the appellant that, as he was only charged in the information with the fact of firing at the Governor, said statements were not admissible. In our opinion appellant is wrong.

The information charged Berenguer and his codefendants with the murder of Col. Irizarry committed in the manner and under the circumstances therein specified. Although it is not so expressed, it embodies the allegation of a conspiracy and the statements related to such conspiracy.

In the decision in *People* v. *Escobar, supra,* there is quoted with approval the following excerpt from 2 Warren on Homicide 133, sec. 182:

"Where an indictment charges a defendant and his codefendants jointly as having committed the crime of murder, this is sufficient to authorize the state to introduce any competent evidence upon the issue of conspiracy, as raised by it, although there is an entire absence of any express allegation or charge of a conspiracy upon the part of the defendant. Such an indictment, jointly charging several defendants with murder, implies a conspiracy."

■ The tenth assignment is that the court erred in admitting the testimony of certain witnesses whose names had not been indorsed on the information.

The matter was within the discretion of the court and it has not been shown that the latter abused such discretion. There was no error. *People* v. *Dones,* 56 P.R.R. 201; *People* v. *Kent,* 10 P.R.R. 325.

■ We need not stop to consider the eleventh assignment of error. Suffice it to say that the defendant waived his motion for a nonsuit by introducing his evidence. *People* v. *Ojeda,* 26 P.R.R. 391; *People* v. *González et al.,* 24 P.R.R. 667.

■■ The twelfth assignment is formulated thus:

"The lower court erred in failing to give facilities for hearing personally the testimony of Clementina Solís de Mercado relating to the place where defendant was on the night of July 20, 1938; and it likewise erred in disregarding the stipulation between the district attorney and defendant's counsel as to what would be the testimony of this woman, without having seen her testify in person."

Notwithstanding the announcement made by counsel for the defendant, that he was ready for trial, he requested that the witness be summoned four days after the trial had commenced. Moreover, he consented to the presentation of this testimony in the form stipulated with the district attorney. Really he has no reason to complain. See *People* v. *Sarria,* 57 P.R.R. 865.

As to the court being bound to give credence to said testimony, appellant's contention is groundless. The decision of this court which he cites—*Caballero* v. *González,* 53 P.R.R.

513—is not applicable. There the holding was that "the positive testimony of a witness as to a particular fact, uncontradicted by anyone, should control the decision of the court, unless his version is physically impossible or improbable, or he should show himself untrustworthy by his contradictions or his manner of testifying." Here, the testimony of the witness to the effect that the defendant was present in a certain spiritualist meeting on the same night when, according to other witnesses, he was presiding the meeting where the murder was planned, was contradicted by the testimony of those other witnesses. The admission of such evidence did not render the same a privileged testimony. It became subject to be weighed like any other evidence introduced by the parties.

By the thirteenth assignment it is maintained that the court manifestly erred in weighing the evidence, and by the fourteenth, that the court acted besides under the influence of passion, prejudice, and partiality.

We fail to find in the record any indication of passion, prejudice, or partiality on the part of the district judge in acting in this case. The conduct of the proceedings was a difficult and complicated matter. What the record actually shows, indeed, is his constant effort to give both sides an opportunity to enforce their rights, without exceeding the proper limits.

The evidence was conflicting in some particulars. It was incumbent on the court to resolve such conflicts and we fail to find error in the way it resolved them. The judge was not bound to believe, and he did not believe, the evidence of alibi adduced, and it was within his discretion to give credence as he did to the witnesses whose testimony served as a basis for the judgment which he rendered.

We will not make a summary of the whole evidence, which is very extensive. The evidence introduced regarding the events of July 25, 1938, which led to the death of Colonel

Irizarry is complete and convincing. It will be sufficient for us to refer to that portion thereof which shows the part taken by defendant in the commission of the crime.

Pablo Quiñones, a resident of Ponce and a member of the Nationalist Party, stated that defendant was the president of that Party in Ponce about the month of July, 1938; that at about 8 o'clock in the evening of July 20, there was held a meeting of the Nationalist Committee at which there were present the defendant, López de Victoria, Prudencio Segarra, Elifaz Escobar and Angel Antongiorgi, and in which it was decided "that the parade which was to be held in July 25 should be prevented," and "that the Governor and all the people on the reviewing stand should be killed." The meeting was presided over by the defendant. On the day of the parade he saw Antongiorgi and Segarra firing.

Narciso Majes, 71 years of age, a resident of Ponce, who lives next to the Nationalist Club, knows defendant who kept a shoemaker shop across the street and remembers that on the night of July 20 a meeting was held in the club. He saw several people go in and defendant among them. Subsequent to the events of July 25 the club was closed.

Eladio Ayala Delucca also lived near the Nationalist Club. On the night of July 20 he saw defendant entering the club as usual.

Guillermo Larragoiti Coimbre, between 21 and 22 years old, a nationalist, testified that on July 20, 1938, he called at the headquarters of the Nationalist Committee of Ponce and met the defendant and Juan Pietri and that defendant said "that they had to avenge in Ponce the twenty-first of March; that they had to kill Governor Winship and those in the reviewing stand, and I told him that I would have nothing to do with that. He asked me whether I was afraid and my answer was that I was afraid of nobody."

Ramón Pérez Brun saw the defendant on the day of the events—July 25—near the place where they occurred.

Pedro José Chardón testified that on July 25 he was a Nationalist; that defendant was the president of the party. On July 24 "I was returning from work, López de Victoria" —one of the defendants—"called me and told me that they had held a meeting presided over by Casimiro Berenguer, and that Berenguer had selected me as one of those to be present at the place of the events . . . they had planned to make an attempt on the life of the Governor, and they assigned me to watch the place and to warn them of the police." The plan was to be carried out next day, by firing at the Governor "at the moment of saluting the flag, aiming at the head because he was wearing a steel breastplate." On the following day he saw Elifaz Escobar, López de Victoria, Segarra and others at the parade, firing at the reviewing stand.

Juan Bautista García Ríos, assistant manager of the Tricoche Hospital, stated that the defendant called there to take away Antongiorgi's corpse because he was interested. He called three times on that day. On the following day he called for the same purpose. Antongiorgi was among those who according to the testimony of Pablo Quiñones, attended the meeting held on the 20th where the plan carried out on the 25th was decided upon, and those who fired at the reviewing stand in which Governor Winship and Colonel Irizarry were. He was killed by a shot which was fired at him on the spot by policeman Luis Modesti.

There is no evidence against the defendant to prove that he was actually seen firing, on July 25; but there is evidence to show that he was one of the persons who incited the commission of the crime, having presided over the meeting at which the plan to be followed in order to commit it was adopted. That being so, the court did not err in weighing the evidence in the sense that it showed his guilt as the perpetrator thereof.

Section 36 of the Penal Code provides:

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, are principals in any crime so committed."

In the fifteenth assignment, it is maintained that "the lower court erred in that Judge Domingo Sepúlveda failed to hold himself disqualified to act in this case, his prejudice against other codefendants, included in the same information against Casimiro Berenguer, having been made manifest by his congratulating in open court the jurors who had convicted the other codefendants."

From an examination of the record nothing appears to show that the defendant presented any motion recusing the trial judge.

The grounds for disqualification of a judge, as fixed by Section 23 of the Code of Civil Procedure are as follows:

"A judge cannot act as such in any of the following cases:
"1. In a judicial action or proceeding of any kind to which he is a party, or in which he is directly or indirectly interested.
"2. In any judicial action or proceeding in which the judge is related by consanguinity or affinity within the fourth degree to any of the parties, or to the attorney of any of the parties within the second degree.
"3. When the disqualified judge has been attorney or counsellor for either party in the action or proceeding pending before his court, or Fiscal in an investigation or criminal proceeding where the facts are the same as in the action submitted for his decision.
"The case is excepted in which the judge shall act only for the purpose of fixing the day for the trial of a case or for the removal of the action to another district, or for issuing an order declaring his disqualification."

None of the above grounds exists in the instant case and, as aptly said by the prosecuting attorney of this court in his

brief, "the fact that defendant himself failed to seasonably move for the recusation of said judge or for a change of venue militates against him and precludes him from raising now, for the first time, the question which was not raised at the proper time; and which, even if it had been timely raised, would have been without merit or legal basis for a ruling in his favor.

The grounds adduced were known to defendant's counsel and in spite of that he expressly moved on behalf of his client, with the latter's consent, for a trial by the court without a jury, presided over by the very judge who, it is now claimed, should have disqualified himself. His attitude is not consistent.

In the sixteenth assignment of error the question is raised as to the nullity of the judgment, which is claimed to have been rendered contrary to the provisions of Section 309 of the Code of Criminal Procedure. This section reads as follows:

"After a plea or verdict of guilty, or after a verdict against the defendant on the plea of a former conviction or acquittal, if the judgment be not arrested or a new trial granted, the court must appoint a time for pronouncing judgment, which, in cases of felony, must be at least two days after the verdict, if the court intend to remain in session so long; but if not, then at as remote a time as can reasonably be allowed."

The mind of the lawmaker was focused on two situations when enacting said section: that created by a plea of guilty and that arising from a verdict against the defendant. We know what occurred in this case. We know that on January 16, 1939, the court entered judgment finding the defendant guilty and sentencing him to life imprisonment. The defendant objected to the judgment, on the ground that he had not been afforded an opportunity to present his allegations, and the court, on January 18, set aside the dispositive part of the judgment, that is, it decided that the pronouncement

thereof finding the defendant guilty, equivalent to a plea or verdict of guilty, should be allowed to stand, and set January 23, 1939, for pronouncing what in the case of a verdict or plea of guilty would amount to the full judgment.

This means that the court then gave to the defendant an opportunity to present his allegations, of which the latter took advantage by filing his motion for a new trial, and it was not until said motion was considered and denied that the court finally proceeded to sentence the defendant.

As that was the procedure followed, as no prejudice was caused to the defendant, and as the true essence of the law was applied, the assignment of error made is without merit.

The last two assignments are that the court erred in refusing a new trial and in rendering judgment as the final result of the criminal proceedings.

As the motion for a new trial was based on grounds which we have already considered and determined adversely to the appellant, and as the judgment is in accord with the facts and the law, the conclusion is unavoidable that the said errors are also nonexistent.

For the reasons stated the appeal must be overruled and the judgment appealed from affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.